# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALBERTO RUIZ, )
)
          Plaintiff, )
)
          v. )    No. 10 C 1632
)
GEORGE ADAMSON, Chaplain, )
Stateville Correctional Center, sued in his )
individual and official capacities. )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

WILLIAM J. HIBBLER, District Judge:

Pro se Plaintiff Alberto Ruiz is an inmate at the Stateville Correctional Center. He has brought suit against Defendant Stateville Chaplin George Adamson for violating his rights by refusing to allow him to change his religious denomination and, in turn, not providing him kosher meals that comply with his professed religious beliefs. Pending before the Court is Defendant's motion for summary judgment. (Dkt. No. 35).

## BACKGROUND

The following facts are drawn from the record and are presented in the light most favorable to Plaintiff, the non-moving party, with all reasonable inferences drawn in his favor. *Groesch v. City of Springfield*, 635 F.3d 1020, 1022 (7th Cir. 2011) (citing *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009); *Darst v. Interstate Brand Corp.*, 512 F.3d 903, 907 (7th Cir. 2008)). Plaintiff failed to respond to Defendant's Local Rule 56.1 materials and so Defendant's statement of fact is deemed admitted for purposes of evaluating the summary judgment motion to the extent that it is supported by the record. *Smith v. Lamz*, 321 F.3d 680,

683 (7th Cir. 2003). Plaintiff responds that he could not obtain a copy of Local Rule 56.1 from his prison law library. (Dkt. No. 53). However, Plaintiff received the Local Rule 56.2 notice to pro se litigant explaining, among other points, how to comply with Local Rule 56.1. (Dkt. No. 38). Additionally, the Court has reviewed all documents in the record provided by the parties, including Plaintiff's deposition, in evaluating the summary judgment motion. The Court cites these documents where appropriate.

When an inmate enters the IDOC, he self identifies his religion. The designation can impact, among other issues, the type of meals provided to the inmate. When Plaintiff entered the IDOC in September 2005, he designated himself Catholic. (*Id.*). Two years later, he changed his designation to Christian. (*Id.*). Plaintiff does not complain about this change.

At the end of 2008 and into the beginning of 2009, Plaintiff claims that he studied, and then began practicing, first the Hebrew, and then the House of Yahweh, religions. (Dkt. No. 36 at 3). As a House of Yahweh member, he observes various festivals including the Passover of the Unleavened Bread, the Day of Atonement, and a weekly Sabbath. (Dkt. No. 36-1 at 17). His faith requires him to pray from the House of Yahweh book three times a day, eats kosher meals, follow the Ten Commandments and wear special garments when praying. (*Id.*). Plaintiff provides affidavits from eight fellow inmates attesting that they have witnessed him observing House of Yahweh practices on a regular basis. (Dkt. No. 47 at 13-20).

Defendant George Adamson has been the Senior Facility Chaplin at Stateville since 2007. (Dkt. No. 36-2 at 2). He is responsible for reviewing inmate requests to change their religious affiliation and to receive religious accommodations. The Illinois Administrative Code instructs that an inmate wishing to change his religious designation once incarcerated must submit a

written request to the prison chaplain. 20 Ill. Admin. Code § 425.30(h). The chaplain may

refuse the request if he determinates that the change is made for reasons other than religious

belief. *Id.* Factors the chaplain may consider when evaluating the request include the frequency

or pattern of requested changes. *Id.* Chaplain Adamson explains that prison gangs often use

religious affiliations to cloak their illegal activities. (Dkt. No. 36-2 at 2). However, there is no

evidence of gang activity in this case, this case centers around Plaintiff's motivation for

requesting a different diet.

Once the chaplain approves an inmate's religious designation, the inmate may request an

alternative diet that conforms to his religious beliefs. 20 Ill. Admin Code § 425.70(c). The

chaplain is responsible for consulting a religious leader or faith representative from the inmate's

religion to determine the requirements for an alternative diet. *Id.*

In February 2009, Plaintiff requested Chaplin Adamson to change his religious affiliation

from Christian to Hebrew, and an associated request for a vegan diet to conform to his professed

Hebrew beliefs. (Dkt. No. 36-2 at 3). Two months later in April 2009, Plaintiff submitted a

second request to have his religious affiliation changed from Christian to House of Yahweh and a

request for a kosher diet. (*Id.*). Although the record is unclear on this point, it appears that

Plaintiff's February 2009 request to transition from Christian to Hebrew was still pending when

he submitted the April 2009 request to go from Christian to House of Yahweh.

Chaplain Adamson did not immediately grant Plaintiff's April 2009 request to be

designated under the House of Yahweh. (*Id.*). He explained that further inquiry was needed

because there was a question regarding the sincerity of Plaintiff's professed belief in the House of

Yahweh. (*Id.*). Chaplain Adamson was concerned that Plaintiff was seeking to make the change

only for dietary reasons. (*Id.*). He points out that notations in Plaintiff's Cumulative Counseling Summary from the relevant period showed that Plaintiff initially inquired about how to change his diet without changing his religious designation from Christian. (*Id.*). Only later did Plaintiff seek to change his religious denomination. (*Id.*). Furthermore, the short time between the first requested changes from Christian to Hebrew, and the second requested change from Christian to House of Yahweh, also concerned the Chaplain about the sincerity of Plaintiff's beliefs. (*Id.*).

Chaplain Adamson states that Plaintiff did not provide information suggesting a sincere belief in the House of Yahweh religion for over a year until August 2010. (*Id.*). The Chaplain does not detail what information led to his conclusion that Plaintiff had sincere beliefs. Plaintiff's religious affiliation was changed from Christian to House of Yahweh on September 22, 2010, more than a year and a half after Plaintiff's original request. (*Id.*)

Following the September 2010 change to House of Yahweh, Plaintiff was given a religious diet agreement allowing him to select a vegan diet. (*Id.* at 4). Chaplain Adamson understood that a vegan diet was the appropriate accommodation for a House of Yahweh member. (*Id.* at 4-5). This understanding is based on a September 2003 letter written by David Heimerman, Elder of the House of Yahweh in Abilene, Texas, to Chaplain Larry Jones of the Dixon Correctional Center. (*Id.* at 9). Elder Heimerman's letter explains that members of the House of Yahweh are prohibited from eating commercial dairy products such as milk, butter, ice cream, yogurt or cheese blends because they contain trace amounts of blood from unhealthy cows. (*Id.*). Elder Heimerman advised that House of Yahweh members should not eat the Kosher Fare Common diet provided by the IDOC because of a concern that it would contain these forbidden dairy products. (*Id.*). Elder Heimerman's letter recommended that House of

-4-

Yahweh members be offered a vegan diet with the option to purchase clean and acceptable food products from the commissary including canned tuna, sardines, and canned chicken. (*Id.* at 9-10).

Plaintiff did not accept the vegan diet offered to him in September 2010. (*Id.* at 4). Instead, he crossed out vegan in the religious diet agreement and wrote in kosher diet. (*Id.*). Plaintiff's request for a kosher meal was denied, and instead he has had to use his own funds to provide supplemental kosher items that he has purchased through the commissary. (Dkt. No. 36 at 5).

Although Plaintiff has not complied with Local Rule 56.1, he has provided admissible evidence that contradictions the Defendant's version of events. Most notably, he submits a letter dated March 24, 2010 from Kahan Anayah Hawkins of the House of Yahweh in Abilene, Texas, detailing various principles of the House of Yahweh. (Dkt. No. 47 at 7). The letter is addressed to the Chaplain of the Stateville Correctional Center. Although Defendant is not named in the letter, he was the Stateville Chaplain at that time, and this is also the period when Plaintiff and Defendant were involved in their dispute over Plaintiff's religious classification and diet requests. The letter also states that courtesy copies were sent to various IDOC officials, and to Plaintiff.

Hawkins' March 2010 letter explains that House of Yahweh members do not consume any food containing pork, shellfish, [or] blood. [The member] [m]ay choose either kosher or vegetarian diets as available at each facility." (Dkt. No. 47 at 8). Plaintiff further elaborated on his understanding regarding an acceptable kosher diet during his February 4, 2011 deposition. (Dkt. No. 36-1 at 15). According to Plaintiff, members of the House of Yahweh must eat kosher

items. (*Id.* at 22). He knows an item is kosher when its package includes a proper symbol such as a K, U within a circle, a star next to a K, or the word kosher is spelled on the package. (*Id.* at 22). He has purchased kosher cereal, beans, rice, fish, noodles and cookies from the commissary to supplement his diet. (*Id.*). Plaintiff disagrees with Elder Heimerman's position regarding the inclusion of unclean dairy products in the kosher meal provided by the IDOC, and believes that he can consume the kosher meal in accordance with House of Yahweh practices. (Dkt. No. 36-1 at 23). Plaintiff does not allege that he suffered from malnutrition at any point because he has been able to purchase satisfactory kosher items from the commissary with his own money. (*Id.* at 22).

In March 2010, prior to his recognition as a House of Yahweh member by Defendant, Plaintiff brought suit against Chaplain Adamson alleging that Adamson's actions of refusing to recognize his membership in the House of Yahweh, and provide him the appropriate kosher meal violated his rights under the First Amendment and the Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* Plaintiff sues Chaplain Adamson in both his official and individual capacity seeking injunctive and monetary relief.

## DISCUSSION

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations

-6-

omitted). Presented evidence must be competent evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted). Defendant, as the moving party, has the initial burden of showing there is no genuine dispute and he is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If Defendant meets this burden, Plaintiff must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634). A genuine dispute is one that could change the outcome of the suit, and contains evidence sufficient to allow a reasonable jury to return a favorable verdict for Plaintiff. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

The Court must first address a number of preliminary matters. Plaintiff's naming of Chaplain Adamson in both his official and individual capacity means that he is actually bringing suit against both Adamson and his employer, the State of Illinois. *Nelson v. Miller*, 570 F.3d 868, 883 (7th Cir. 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Plaintiff cannot obtain monetary relief from the State of Illinois for either a First Amendment violation brought pursuant to 42 U.S.C. § 1983 or a RLUIPA claim. *Sossamon v. Texas*, 131 S. Ct. 1651, 1658-59 (2011); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011); *Nelson*, 570 F.3d at 884-85.[1] Equally, Plaintiff cannot

---

[1] In addition, Defendant invoked Illinois's sovereign immunity only to the extent of claims for monetary relief. (Dkt. No. 37 at 7-8.) He did not address whether sovereign immunity would bar Plaintiff's claim for equitable relief, and in specific, Defendant's RLUIPA claim. *See*

obtain monetary relief against Adamson in his individual capacity for a RLUIPA claim. *Vinning-El*, 657 F.3d at 592; *Maddox*, 655 F.3d at 716; *Nelson*, 570 F.3d at 885-89. Plaintiff may only proceed with a monetary claim against Adamson in his individual capacity for the First Amendment claim under § 1983. It should also be noted that Plaintiff's claims for relief are governed by the limitations of the Prison Litigation Reform Act. 18 U.S.C. § 3626; 42 U.S.C. § 1997e(e); *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008).

Additionally, Defendant argues that Plaintiff's equitable claims are moot. A plaintiff is also prohibited from bringing a claim for equitable relief once the claim has become moot. *Maddox*, 655 F.3d at 716; *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009); *Nelson*, 570 F.3d at 883. A case is moot and cannot proceed if the Defendant satisfies the Plaintiff's entire demand eliminating the need for further litigation. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 706 (7th Cir. 2011). However, "[v]oluntary cessation does not moot a case or controversy unless subsequent events make it absolutely clear that the alleged wrongful behavior could not reasonably be expected to occur." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (citations omitted). "[T]he burden of proving that the behavior cannot be reasonably expected to recur is a 'heavy' one that lies with the party seeking a determination that the case is moot." *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 719 (7th Cir. 2011) (citing *Parents Involved in Cmty. Sch.*, 551 U.S. at 719).

---

*Sossamon v. Texas*, 131 S. Ct. 1651, 1666 (2011) (Sotomayor, J., dissenting) (citations omitted). As such, the Court will not address the question any further. *Floyd v. Thompson*, 227 F.3d 1029, 1034-35 (7th Cir. 2000) (instructing that a Court should leave unsettled questions regarding sovereign immunity unaddressed when the State does not raise the argument).

The original complaint brought in March 2010 sought relief on two equitable grounds: (1) altering Plaintiff's religious designation from Christian to House of Yahweh, and, (2) providing him the requested kosher meal. The IDOC redesignated Plaintiff as a member of the House of Yahweh faith in September 2010. (Defendant argues that both of Plaintiff's equitable claims are moot, but this clearly cannot be because he has never received the kosher meal he desires, so the question of mootness is limited to the first issue of redesignation to House of Yahwah).

However, according to Defendant's own Local Rule 56.1 statement and supporting affidavit, Defendant began questioning the sincerity of Plaintiff's religious beliefs as a member of the House of Yahweh in October 2010, a month following the voluntary redesignation. (Dkt. No. 36 at 4; Dkt. No. 36-2 at 4). Defendant explained that he did this out of a concern that Plaintiff refused the vegan meal option in September 2010, and asked for a kosher meal. (*Id.*). This concerned Defendant because of his belief that the vegan meal was the only appropriate meal for a House of Yahweh member. (*Id.*).

By Defendant's own admission, he continued to inquire into the sincerity of Plaintiff's professed belief in the House of Yahweh following his redesignation. Although the record does not state whether Plaintiff could suffer any negative consequences such as being redesignated back to a Christian faith, the record does demonstrate that Defendant has continued to make inquiries regarding the sincerity of Plaintiff's religious beliefs. Defendant cannot meet his "heavy" burden of demonstrating that the "alleged wrongful behavior could not reasonably be expected to occur" because Defendant's alleged unlawful action of continuing to challenge the

sincerity of Plaintiff's religious beliefs did continue to reoccur. *Parents Involved in Cmty. Sch.*, 551 U.S. at 719.[2]

To summarize the initial matters, Plaintiff may only proceed against Defendant in his official capacity for claims for equitable relief of: (1) the failure to approve his redesignation to the House of Yahweh, and (2) the failure to provide a kosher meal. Both claims are evaluated under First Amendment and RLUIPA standards. Plaintiff cannot bring a claim for monetary relief against Defendant in his official capacity. As to Plaintiff's claim for monetary relief against the Defendant in his individual capacity, Plaintiff may only bring a claim under the First Amendment. He cannot bring a claim for monetary relief under RLUIPA.

Turning to Plaintiff's equitable relief claim against Defendant in his official capacity under the RLUIPA and the First Amendment, the Court must apply different standards for each and the Court considers RLUIPA first under the general principle that it should consider non-constitutional issues before reaching constitutional ones. *Vinning-El*, 657 F.3d at 594-95; *Koger*, 523 F.3d at 801 (citations omitted). "RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate 'that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Koger*, 523 F.3d at 796 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)); *see also Ortiz*, 561 F.3d at 670; *Nelson*, 570 F.3d at 877. "In establishing a claim under RLUIPA,

---

[2] Mooting the equitable claims through Plaintiff's release from prison is not likely because his projected date for placement onto mandatory supervise release is presently November 13, 2032. Illinois Department of Corrections Internet Inmate Status for Alberto Ruiz, R46712, *available at* http://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=r46712 (last visited February 28, 2012).

the Plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenge practice substantially burdens that exercise of religion." *Koger*, 523 F.3d at 796 (citing 42 U.S.C. § 2000cc-2(b)). "Once the Plaintiff establishes [his] prima facie case, the Defendant[] bear[s] the burden of persuasion on any other element of the claim, namely whether [his] practice is the least restrictive means of furthering a compelling governmental interest." *Koger*, 523 F.3d at 796 (internal quotation marks and citations omitted).

As to Plaintiff's initial burden of showing that he seeks to engage in the exercise of religion, "RLUIPA defines 'religious exercise' to encompass 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief . . . .'" *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003) (quoting 42 U.S.C. § 2000cc-5(7)). RLUIPA protects religious beliefs but does not extend to beliefs based on "purely secular considerations." *Koger*, 523 F.3d at 797.

Here, there is no dispute that Plaintiff's actions were taken in exercise of his professed religious beliefs. He stated that he desires to follow the House of Yahweh. He explained his understandings of the religion and the various actions that he took to follow the religion including learning the tenants of the religion and altering his diet. Notably, he used his own funds to purchase kosher items from the commissary to comply with the House of Yahweh. He also obtained the March 24, 2010 letter from Kahan Anayah Hawkins of the House of Yahweh in Abilene, Texas to support his understanding of the required religious diet. He provides affidavits from witnesses who claim that they saw him follow the House of Yahweh.

In contrast, Defendant's primary argument is the Cumulative Counseling Summary log documenting Plaintiff's interactions with his counselor Karen Rabideau. Defendant argues that

the log shows that Plaintiff first asked about how to obtain a vegan diet before mentioning a change in religion. This lead Defendant to infer that Plaintiff was seeking to change his religion to obtain a different diet instead of a desire to follow a religious belief.

Defendant's reading of the Cumulative Counseling Summary log is incorrect. It is true that there is a notation that on March 11, 2009, Plaintiff inquired to Rabideau about how to obtain a vegan diet without having to change his religion. (Dkt. No. 36-2 at 7). However, there is also an entry that ten days earlier on March 1, 2009, when Plaintiff asked how to change his religion. (*Id.*). Furthermore, Plaintiff raised the failure to change his religion issue to Ms. Rabideau on a monthly basis over the next six months. (*Id.*). Thus, counseling log, tallies seven entries in Plaintiff's favor verses one in Defendant's. And this does not even consider the previously discussed Plaintiff's evidence demonstrating that his actions were taken in adherence to his beliefs in the House of Yahweh.

The next question is whether the Defendant's refusals to alter Plaintiff's religious classification from Christian to House of Yahweh, and to approve a kosher meal, resulted in an substantial burden. Under RLUIPA, "'a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise effectively impracticable.'" *Nelson*, 570 F.3d at 878 (quoting *Civil Liberties for Urban Believers*, 342 F.3d at 760-61). "[G]overnment conduct is substantially burdensome when it puts substantial pressure on an adherent to modify his behavior and violate his beliefs." *Nelson*, 570 F.3d at 878 (citing *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Koger*, 523 F.3d at 799) (quotation marks omitted).

Here, Defendant based his understanding of the House of Yahweh on the information he received from the House of Yahweh elders in Texas sent to a different IDOC chaplain at a different prison several years earlier in 2003. In light of the letter and its conflict with Plaintiff's expression of how to observe the House of Yahweh, Defendant concluded that Plaintiff was not actually seeking to change his designation for religious purposes but was simply seeking a better meal. Defendant's actions go to far beyond what is allowed by RLUIPA.

A religious "clergy opinion has generally been deemed insufficient to override a prisoner's sincerely held religious beliefs." *Koger*, 523 F.3d at 799-800 (citations omitted). As explained by the Seventh Circuit in *Nelson*, a correctional official places a substantial burden on a prisoner's religious exercise when he requires: (1) that the preferred diet must be "compelled" by the religion, (2) requires that the requested diet conform with the diet endorsed by religious clergy's approved diet, or (3) rejects a prisoner's religious beliefs because they conflict with the religious understanding as explained by religion's clergy. 570 F.3d 878-79 (citations omitted).

Defendant argues that "[t]his is not a case where Plaintiff was forced to choose between his religious beliefs and adequate nutrition," because the meal provided to him was both "nutritious" and met the House of Yahweh requirements as explained by the 2003 letter. (Dkt. No. 37 at 6). This argument misses the point because Plaintiff was provided a meal options that did not comport to *his* understanding of the House of Yahweh.[3]

_____

[3] Defendant has framed the case from the perspective that he believes the vegan meal is the only acceptable meal for House of Yahweh members at Stateville in light of the instructions from the 2003 letter. (Dkt. No. 37 at 6); (Dkt. No. 49 at 2) ("Because the Kosher Common Fare Diet is the only kosher diet available at Stateville, and the Kosher Common Fare Diet is not acceptable, members of the House of Yahweh are offered a vegan diet, which is acceptable.") (citations omitted). In turn, Plaintiff's failure to accept the vegan meal led Defendant to continue to question why Plaintiff was seeking the accommodation. Defendant's professed concern is

-13-

Further, Defendant fails to recognize that Plaintiff had to purchase food from the commissary that conformed to his understanding of the House of Yahweh to avoid either violating his religious beliefs (eating kosher) or not receiving necessary nutrition. (Dkt. No. 36-2 at 22). Plaintiff was certainly put to the improper choice between observing his religious beliefs as he understood them and adequate nutrition. *Koger*, 523 F.3d at 799 (recognizing that a prisoner can bring a claim where he is "put to an improper choice between adequate nutrition and observance of the tenets of his faith.") (internal quotation marks and citations omitted). Plaintiff has meet his burden of establishing a prima facie RLUIPA violation.

The Court must now consider the last element of whether Defendant's actions were the least restrictive means to further a compelling governmental interest. *Koger*, 523 F.3d at 800. Although Defendant recognized this standard in his recitation of controlling case law, he failed to argue the point in any part of his initial memorandum or reply in support of his motion for summary judgment. In fact, Defendant limited his argument to the substantial burden point.

---

whether Plaintiff is a non believer who is falsely claiming House of Yahweh beliefs to obtain a better meal over the regular meal provided at the prison because Defendant believes that a House of Yahweh member would want a vegan meal.

Both the 2003 and 2010 letters from House of Yahweh officials agree that the vegan meal is an appropriate accommodation. The purpose for the meal accommodation, according to both letters, is to avoid unclean food. But neither letter mandates a vegan meal as a tenant of the House of Yahweh. The 2003 letter take the position that a the vegan meal addresses the unclean food concerns, while the 2010 letter states that both the kosher and vegan meals are acceptable. Both also recognize certain commissary food as acceptable.

Plaintiff states that he believes that he must have kosher food only, but there is no indication in the record that he believes a vegan meal can be "kosher." Notably, Defendant does not argue that Plaintiff is a House of Yahweh believer who accepts that the vegan meal can meet religious requirements, and is simply seeking the kosher meal because he prefers it over the vegan meal for non religious reasons.

(Dkt. No. 37 at 3). Defendant's failure to properly develop the argument results in its waiver. *Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010) (citations omitted). It is Defendant's burden to come forth with evidence on this point and the failure to do so requires automatic rejection of the position. *Koger*, 523 F.3d at 800-01. Furthermore, the record does not suggest that Defendant's actions in this case were furthering a compelling governmental interest through the least restrictive means possible.

In summary, Plaintiff has established a prima facie RLUIPA claim and Defendant has failed to rebut this by showing that the challenge practice was the least restrictive means to further a compelling governmental interest. Plaintiff may proceed with equitable claim regarding the failure to approve his redesignation to the House of Yahweh, and the failure to provide a kosher meal under RLUIPA. As Plaintiff's RLUIPA claim for equitable relief survives summary judgment, it is inappropriate for the Court to consider Plaintiff's equitable claim under the First Amendment. *Koger*, 523 F.3d at 801 (citations omitted).

The remaining claim is Plainitff's claim for monetary relief against Defendant in his individual capacity under the First Amendment. As explained above, Plaintiff can only seek monetary relief against Plaintiff in his individual capacity. He cannot seek monetary relief against Illinois under the First Amendment or RLUIPA, and he cannot seek monetary relief against Plaintiff in his individual capacity under RLUIPA.

As an additional point, although not raised by Defendant, the Court notes that the PLRA governs this suit and it prohibits Plaintiff from receiving damages for purely mental or emotional damages while incarcerated without a primary showing of physical injury. 42 U.S.C. § 1997e(e). Thus, Plaintiff is limited to nominal damages for any violation of his religious beliefs. *Smith v.*

*Peters*, 631 F.3d 418, 421 (7th Cir. 2011); *Koger*, 523 F.3d at 805 (Evans, J., concurring). However, the PLRA cap does not apply to the monetary damages necessary to compensate Plaintiff for the money spent at the commissary to provide himself religiously appropriate food due to the failure to provide him an appropriate meal.

Defendant recognizes that Plaintiff has raised a First Amendment claim in addition to the RLUIPA claim. (Dkt. No. 37 at 1). But, he goes onto discuss RLUIPA without a separate First Amendment discussion. Additionally, he asserts qualified immunity by saying that, "Even if this Court to find that there is a genuine issue of material fact as to whether the Defendant's conduct violated Plaintiff's constitutional rights, in his ***official capacity***, the Defendant would necessarily be entitled to qualified immunity." (Dkt. No. 37 at 8) (emphasis added). Defendant cites to *Koger,* a case that only analyzes a RLUIPA claim. (Dkt. No. 37 at 10) (citing 523 F.3d at 797).

There are numerous problems with Defendant's assertion of qualified immunity. Defendant's states that he is entitled to immunity in his official capacity. (Dkt. No. 37 at 8). A suit against a Defendant in his official capacity is a suit against his government entity. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). Defendant's invocation of official capacity circles him back to a claim against the State of Illinois. Qualified immunity only protects a Defendant for a claim for monetary relief, it does not protect against a suit for equitable relief. *Moss v. Martin*, 614 F.3d 707, 712 (7th Cir. 2010). As previously explained, Plaintiff may not proceed with a monetary claim against the State of Illinois under either a First Amendment or RLUIPA claim, and cannot proceed with a monetary claim against Plaintiff in his individual capacity under RLUIPA. The only appropriate monetary claim is against Plaintiff under the First Amendment, and this claim would be against Plaintiff in his individual capacity, not his official

-16-

capacity. A claim against Defendant in his official capacity is a claim against Illinois. Illinois has sovereign immunity, not qualified immunity.[4]

In addition, Plaintiff argues qualified immunity within the context of the RLUIPA claim. (Dkt. No. 37 at 8-10). Plaintiff never argues the First Amendment claim at any point in his summary judgment memorandum in support or reply. This is a problem because there are different standards for RLUIPA and First Amendment claims. *Vinning-El*, 657 F.3d at 595.

What remains is an unanswered First Amendment claim and a question of whether Plaintiff can proceed with a qualified immunity defense to this claim. As to the unanswered First Amendment claim, Plaintiff still has the burden at summary judgment to show a genuine issue of material fact requiring a trial. *Omnicare, Inc.*, 629 F.3d at 705. So the Court must still consider the First Amendment claim. Additionally, the Court should find that qualified immunity is waived only when the failure to properly assert the defense results in the opposing party being prejudiced by the lack of appropriate notice resulting in an inability to respond to the defense. *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (citing *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir. 1990)). The Court does not see any indication of harm to Plaintiff from the qualified immunity argument presented by Plaintiff. The Court's concern, that the qualified immunity argument was raised to a RLUIPA claim against Defendant in his official capacity, appears to have been missed by both parties. As there was no harm to Plaintiff, and it is clear that Defendant is seeking to assert qualified immunity, it is

---

[4] It is possible that Defendant's assertion of qualified immunity for claims against Defendant in his official capacity is simply a typo and he meant to type "individual" instead of "official" capacity. Defendant's memorandum in support does recognize that a claim against Defendant in his official capacity is against Illinois and that Illinois has sovereign immunity. (Dkt. No. 37 at 7-8).

appropriate to allow him to assert qualified immunity to the only permissible claim — the First

Amendment claim for monetary damages against Defendant in his individual capacity.

Turning to the merits of the qualified immunity argument, "[t]he doctrine of qualified

immunity shields from liability public officials who perform discretionary duties and it thus

protects [officials] who act in ways they reasonably believe to be lawful." *Wheeler v. Lawson*,

539 F.3d 629, 639 (7th Cir. 2008) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987);

*Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007)). "Qualified immunity balances two

important interests — the need to hold public officers accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The

Supreme Court has made clear that the doctrine of qualified immunity provides 'ample room for

mistaken judgments' and protects all those but the 'plainly incompetent and those who

knowingly violate the law.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Hunter v.

Bryant*, 502 U.S. 224, 227 (1991); *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). As previously

mentioned, "[t]he qualified immunity defense protects governmental defendants from an action

for money damages." *Moss*, 614 F.3d at 712.

The two-part test for determining qualified immunity is whether: "(1) the facts, taken in

the light most favorable to the Plaintiff, show that the Defendant violated a constitutional right;

and (2) the constitutional right was clearly established at the time of the alleged violation."

*Wheeler*, 539 F.3d at 639 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). This Court has

discretion in determining which question should be considered "first in light of the circumstances

in the particular case at hand." *Pearson*, 555 U.S. at 236. "Although qualified immunity is an

affirmative defense, once the defense is raised, it becomes the Plaintiff's burden to defeat it."
*Wheeler*, 539 F.3d at 639 (citing *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007); *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001); *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999)). "A Plaintiff may defeat a qualified immunity defense by 'pointing to a clearly analogous case establishing a right to be free from the specific conduct at issue' or by showing that 'the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Wheeler*, 539 F.3d at 639 (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)).

The qualified immunity analysis is controlled by *Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011). As explained by *Vinning-El*, Plaintiff has a First Amendment right to free exercise of his religious beliefs while in prison, but this right may be limited by a prison regulation that is "reasonably related to legitimate penological objectives." 657 F.3d at 592-93 (citations omitted). A prisoner is entitled to request a religious meal accommodation, but he cannot falsely assert a religious preference when his true intention is a non religious reasons such as seeking a better quality meal. *Id.* at 593-94. However, a correctional official cannot turn down a request for a religious meal simply because the inmate differs with religious leaders on the diet required by the religion. *Id.* at 593.

Thus, if Defendant used the tenants of the House of Yahweh, as he understood them from 2003 letter, to disqualify Plaintiff from religious accommodation simply because Plaintiff's views conflicted with Defendant's understandings, then Defendant's actions violated Plaintiff's First Amendment rights. *Id.* at 595. In contrast, if Defendant used the letter as part of

-19-

determining whether Plaintiff was seeking a different meal for non religious reasons, then this would not violate the constitution.  *Id.*

There is a factual dispute between the parties over Defendant's motivation in this case. Viewing the facts in the light most favorable to Plaintiff as required, Plaintiff continually explained his understanding of House of Yahweh, and his belief that he was required to have a kosher meal.  He was continually rebuffed by Defendant because Plaintiff's expressed views conflicted with Defendant's view that the vegan meal was appropriate.  Defendant allegedly failed to recognize that a House of Yahweh member could have different views from Defendant's understanding of the House of Yahweh.  In fact, he continues to adhere to his view that the vegan meal is the appropriate choice in his filings before the Court.  (Dkt. No. 37 at 6; Dkt. No. 49 at 2).

*Vinning-El* explains that an official violates the constitution by "refus[ing] to approve religious diets for inmates who differ on dietary questions from [the views of] their [sect's religious] leaders . . . ."  *Id.* at 593.  Plaintiff has set forth competent evidence to suggest that this unconstitutional conduct occurred here.  In fact, the unconstitutional conduct has allegedly gone further because it is Plaintiff disagreeing with the views of his religious leaders as interpreted by Defendant.  Finally, *Vinning-El* also points out that these legal principles have been clearly established for decades.  *Id.* Defendant cannot obtain qualified immunity at the summary judgment stage.  The qualified immunity issue must be resolved by the Court at a hearing prior to trial.  *Id.* at 595.

To summarize the Court's ruling:

- Plaintiff may proceed with his equitable relief claim against Defendant in his official capacity as to both religious designation and meal accommodation. This claim proceeds under RLUIPA and the limitations of the PLRA. The Court does not reach the First Amendment claim because RLUIPA is sufficient to provide him relief. Defendant's argument that the equitable claim is moot is rejected. This claim must be resolved at trial.

- Plaintiff may proceed with his claim for monetary relief against Defendant in his individual capacity for a First Amendment violation. His claim for the violation of religious beliefs is limited by the PLRA's restriction on mental or emotional damages without a physical injury. But Plaintiff is not limited by the PLRA in attempting to recover money he spent at the commissary in supplementing his diet to counter the alleged religious discrimination. Defendant's invocation of qualified immunity against these monetary claims cannot be resolved at summary judgment. Qualified immunity must be resolved through a hearing before the Court prior to trial.

- Plaintiff may not proceed with his claim for monetary relief against Plaintiff in his official capacity under either the First Amendment or RLUIPA.

- Plaintiff may proceed with his claim for monetary relief against Defendant in his individual capacity under RLUIPA.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. No. 35), is granted in part, and denied in part. The parties are encouraged to discuss settlement.

ENTER:

Dated:

_Wm. J. Hibbler_
WILLIAM J. HIBBLER
UNITED STATES DISTRICT JUDGE

-21-